**FILED & ENTERED**

MAY 01 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Sie Khalil<br><br><br>Debtor(s). | CHAPTER 7<br><br>Case No.:  1:12-bk-11156-MT<br><br>Adv No:   1:13-ap-01234-MT |
| David K Gottlieb, Chapter 7 Trustee<br><br>Plaintiff(s),<br>   v.<br><br>Lawrence D Rose<br><br><br>Defendant(s). | **MEMORANDUM OF DECISION RE:<br>MOTION FOR SUMMARY JUDGMENT**<br><br><br>Date:         April 30, 2014<br>Time:        11:00 a.m.<br>Courtroom: 302 |

On or about late 2010, Sie Khalil ("Khalil" or "Debtor") and Lawrence D. Rose ("Rose" or "Defendant" or "Movant") were involved in litigation in the Los Angeles Superior Court. As a result of a compromise and settlement of the litigation between the parties, Khalil and Rose entered into a real estate transaction together, purchasing real property located at 18431 Arminta Ave., Reseda, CA 91335 (the "Property"). The parties purchased the Property for $375,000, with Khalil allegedly contributing $75,000 to the purchase price and Rose allegedly contributing $300,000.

The parties applied for a loan together for purchase of the Property, which was secured by Rose's portfolio account with MorganStanley. The loan was approved and $300,000 was wired from MorganStanley to escrow. On or about December 20, 2010, Khalil wired $69,065.99 to escrow. Khalil also provided an additional $11,250 deposit, and the parties split the closing costs, closing escrow on or about December 21, 2010. The grant deed vested title in Rose and Khalil as tenants in common.

On or about April 2011, Khalil and Rose entered into a settlement agreement (the "Settlement Agreement"). The parties dispute whether this Settlement Agreement establishes their respective interests in the Property based on: (1) their contributions to the purchase price of the Property and; (2) its terms regarding how the proceeds of a sale of the Property would be distributed between the parties.

On February 6, 2012, Khalil filed a chapter 7 voluntary petition. David Gottlieb was the duly appointed trustee (the "trustee"). Debtor's Schedule D listed the Property with a value of $312,900 encumbered by a secured debt held by MorganStanley in the amount of $295,000.

Allegedly, on or about April 2012, Debtor stopped making interest payments on the loan, and Rose needed to make the payments in order to protect his portfolio. On or about June 25, 2012, Rose paid off the $300,000 loan plus $1,256 in interest.

On October 16, 2013, Rose filed a motion for settling property value of co-owned property (the "Valuation Motion").[1] The Motion sought to have the Court determine Debtor's and Rose's respective interests in the Property. The Valuation Motion asserted that the Court should find Debtor to have a 20% interest in the Property and Rose an 80% interest in the Property based on their respective contributions to the purchase price.

On October 22, 2013, the trustee commenced an adversary proceeding under § 363(h) to sell co-owned property ("Sale Adversary"). The complaint seeks to sell both the estate's and Rose's interests in the Property.

On October 23, 2013, the trustee opposed the Valuation Motion, and Debtor filed a declaration in opposition thereto. The trustee stated that Rose's counsel had requested that he stipulate and agree that Rose has an 80% interest in the Property based on an unexecuted settlement agreement and unrecorded deed of trust. The trustee refused to agree to such a stipulation. In opposition to the Valuation Motion, the trustee stated that the issues involved required an adversary proceeding to be filed; Rose was estopped to deny a 50% interest in the Property based on prior statements asserting a 50% interest and; that the Valuation Motion failed to include several material terms regarding the Property. Among other reasons for estoppel, the trustee pointed to two of Rose's statements contained in a declaration wherein he stated he was a half-owner of the Property with Debtor.

On October 29, 2013, Rose filed a reply to the trustee's opposition.

On November 7, 2013, the Court held hearing on the Valuation Motion and issued a "notice of tentative ruling re motion for setting property value of co-owned property interests." [Compendium Exhibit 16]. On November 14, 2013, the Court entered an order denying the Motion based on the reasons as outlined in the tentative ruling ("Valuation Order").[2]

---

[1] The Court takes judicial notice of the Valuation Motion filed at Docket 71 in the main bankruptcy case, as it is not included as an exhibit to the MSJ. Fed.R.Evid. 201(b); *United States v. Bernal–Obeso*, 989 F.2d 331, 333 (9th Cir.1993) (the Court may take judicial notice of court records).

[2] The Court takes judicial notice of the Valuation Order as Docket 90 in the main bankruptcy case.

On January 15, 2014, Rose filed a motion for summary judgment ("MSJ") in the Sale Adversary. The MSJ states that the sole issue before the Court is the ownership interests in the Property of Debtor and Rose. Specifically, Movant argued that the extent of the interest of a tenant in common in co-owned property is proportionate to the contributions of the co-owners pursuant to California law. Motion at 2-6. As a result, Movant contended that he was 80% owner and entitled to that proportion of the sale proceeds. Motion at 5.

On February 5, 2014, the trustee filed an opposition (the "Opposition") to the MSJ and evidentiary objections to the declarations filed in support of the MSJ. The trustee argues that Rose is prevented from litigating ownership interests in the Property based on the Valuation Order under claim and issue preclusion as well as judicial estoppel. In the alternative, the trustee argues that Rose is not entitled to summary judgment, as genuine issues of material fact exist.

On February 12, 2014, Rose filed a reply to the Opposition (the "Reply"). The Reply reiterates the same arguments about ownership interests based on purchase price contributions and argues that the Court can reconsider the Valuation Order under FRCP 60(b). Rose contends that no final judgment has been entered by the Court determining property interests for estoppel to apply and judicial estoppel is inapplicable because there is no reliance.

The parties have both agreed to sale of the Property pursuant to a joint status report. The parties have further agreed to allow the sale to move forward despite the dispute regarding distribution of the sale proceeds.

On March 26, 2014, this Court held oral argument on Rose's MSJ. Trustee's counsel appeared on behalf of the trustee and Defendant's newly retained counsel appeared on behalf of Rose. Defendant's counsel made arguments during oral argument that were not explicitly contained in Rose's memorandum of points and authorities in support of the MSJ. In response, trustee's counsel made arguments not contained in his opposition. Based on these new arguments, the Court took the matter under advisement to review the cases cited on the record and consider the new arguments, which are explained below.

Movant argued that he is entitled to $300,000 reimbursement claim for his respective contribution in the Property pursuant to California law regardless of the respective interests as outlined in the grant deed (*i.e.,* the 50% 50% ownership interests). The trustee disagreed with Movant's contentions because: (1) the sale of the property will be executed pursuant to the Bankruptcy Code, which include the trustee's strong arm powers under § 544(a)(3), giving the trustee the power to avoid an unperfected security interest as a bona fide purchaser ("BFP") and; (2) the presumption under California law that tenants in common hold 50/50% interests in the Property pursuant to the grant deed governs this dispute.

**Evidentiary Objections**

The Court has reviewed the trustee's evidentiary objections, and the Court did not rely on any of the objectionable evidence in reaching its ruling as outlined below.

**Standard**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FRCP 56(c) (incorporated by FRBP 7056).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. *Id.* at 324. The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valadingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Insurance Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir.1981).

**Analysis**

The question before the Court is whether a genuine issue of material exists on any of the required elements of a § 363(h) claim such that judgment may be entered as a matter of law. This statute reads in relevant part:

> (h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

Upon review of the parties' statements of undisputed and disputed material facts, the parties both argue that the ownership interests of the Property are undisputed facts but for different reasons. Rose argues that the interests are clearly 80% 20% based on their alleged respective contributions to the purchase price of the Property as evidenced by the parties' Settlement Agreement, and the trustee argues that the interests clearly are 50% 50% based on judicial estoppel and preclusion as per the Valuation Order.

Specifically, Rose asserts that no genuine issue of material fact exists in this adversary as to the estate's and co-owner's interest in the Property based on, *inter alia*, the Settlement Agreement between the parties. [Compendium of Exhibits 11]. The trustee argues that genuine issues of material fact exit as to the accuracy of the factual representations regarding this agreement.

The trustee also argues, however, that no genuine issue of material fact exists as to the estate's and co-owner's interest in the Property because preclusion applies based on the final

Valuation Order and judicial estoppel prevents Rose from now asserting an inconsistent position. The Court notes that there is no trustee cross-motion for summary judgment before the Court.

Moreover, while the parties both assert that there is no genuine issue of material fact as to the estate's and co-owner's interest in the Property, the parties fail to address the other requirements for sale under §363(h). In other words, a determination of the estate's and co-owner's interests in the Property is merely one part of sale under § 363(h). In a §363(h) action the plaintiff must also prove that: (1) partition in kind of such property among the estate and such co-owners is impracticable; (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners; (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

Here, Defendant has answered the Complaint [Compendium Exhibit 2] and: (1) admits that partition of the Property is impracticable [¶ 11]; (2) denies the allegation that sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owner [¶12]; (3) denies the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners [¶ 13]; and (4) admits that such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power [¶14]. Therefore, two issues remain that appear to be disputed genuine issues of material fact as to the § 363(h) claim.

The Court, however, will consider the MSJ presently before it to be a motion for partial summary judgment as to the issue of the estate's and co-owner's interests in the Property. Since the trustee has not filed a cross-motion for summary judgment, but also argues that no genuine issue of material fact exists as to this issue, the Court can consider granting partial summary judgment on these grounds under Federal Rule of Civil Procedure 56(f) ("FRCP") as made applicable by Federal Rule of Bankruptcy Procedure 7056. FRCP 56(f) states in relevant part:

> (f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:
>
> (1) grant summary judgment for a nonmovant;
>
> (2) grant the motion on grounds not raised by a party; or
>
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

Under Rule 56(f) a cross-motion need not be filed for entry of summary judgment in favor of the opposing party. If there are no factual issues and the opposing party is entitled to judgment as a matter of law, and the moving party had notice and an adequate opportunity to address the issues, summary judgment may be granted forthwith. *Gospel Missions of America v. City of Los Angeles*, 328 F3d 548, 553 (9th Cir. 2003)("Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a "full and fair opportunity to ventilate the issues involved in the matter. The salient issues upon which the district court granted summary judgment were presented in the original motion.")(citation omitted).

Accordingly, there are three questions before the Court: (1) whether the evidence provided by Rose establishes that there is no genuine issue of material fact as to his $300,000 reimbursement claim for an 80% contribution to the purchase price of the Property; (2) whether Rose is precluded from relitigating the issue of the estate's and co-owner's interests in the Property in this adversary based on the Valuation Order and; (3) whether Rose is estopped from relitigating the issue of the estate's and co-owner's interests in the Property based on the doctrine of judicial estoppel.

I. DOES THE EVIDENCE ESTABLISH THAT ROSE IS ENTITLED TO REIMBURSEMENT OF $300,000 BASED ON A CONTRIBUTION OF 80% OF THE PURCHASE PRICE OF THE PROPERTY?

The Court must first determine whether a genuine issue of material fact exists as to the respective ownership interests in the Property. The MSJ contends that the Settlement Agreement and accompanying exhibits establish that Rose contributed $300,000 of the purchase price and Debtor contributed $75,000, resulting in an 80% interest for Rose and a 20% interest for Debtor.[3]

At oral argument, Movant's counsel argued that Rose's entitlement to $300,000 for reimbursement for his contribution to the purchase price of the Property was a separate issue from ownership interests in the Property. To the extent that Movant argues that the reimbursement issue is a separate and distinct issue from the ownership interests in the Property, the Court cannot determine how the two issues may be distinguished. Specifically, as discussed at length below, since the grant deed is an unambiguous legal document, its terms control the estate's interest in the Property—and Rose's reimbursement claim essentially seeks to modify the terms of the grant deed by asserting a $300,000 claim that may exceed 50% of the sale proceeds.

State law determines the existence and scope of a debtor's interest in property. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917-18, 59 L.Ed.2d 136 (1979). That interest is determined upon filing the bankruptcy petition and becomes part of the bankruptcy estate at that time. 11 U.S.C. § 541(a). Accordingly, the Court must look to California law to determine the existence and scope of Debtor's interest in the Property.

Rose claims that under California law Debtor's interest in the Property is proportionate to the unequal contribution to the purchase price or to improvements to the property. Movant cites several California cases for this proposition. *See, e.g., Schuyler v. Broughton*, 70 Cal. 282, 283-84, 11 P. 719 (1886); *Donnelly v. Wetzel*, 37 Cal. App. 741, 174 P. 689 (1918); *Yeoman v. Sawyer,* 99 Cal. App. 2d 43, 46, 221 P.2d 225 (1950); *Demetris v. Demetris*, 125 Cal. App. 2d 440, 445, 270 P.2d 891 (1954); *Cosler v. Norwood*, 97 Cal. App. 2d 665, 218 P.2d 800 (1950); *Kershman v. Kershman*, 192 Cal. App. 2d 23, 26, 13 Cal. Rptr. 290 (1961). These cases, however, do not directly address the issue presently before the Court. This Court is not adjudicating a partition or reformation action, or a division of community property assets, which are the subject of the aforementioned cases. This Court is charged with determining property interests for purposes of a sale pursuant to the Bankruptcy Code.

///

///

---

[3] The Court notes that the Settlement Agreement does not appear to be fully executed, as it is undated but signed.

i.  In re Henshaw; Estoppel by Deed & Parol Evidence

The bankruptcy court and district court in the District of Hawaii were recently faced with the same issue presently before the Court in *In re Henshaw*, 485 B.R. 412, 414-15 (D. Haw. 2013). In *Henshaw*, the appellants and the debtors purchased property for $680,000, with title vested in the appellants and the debtors as joint tenants. Although the deed vested title in the appellants and the debtors as joint tenants, the appellant argued that he had paid essentially the entire purchase price, providing $595,149.20 by refinancing his home in San Diego and $83,000 from funds obtained from his retirement accounts. In comparison, the debtors contributed only $6,970.20 towards escrow costs. Appellant claimed that the debtors took title as joint tenants solely for estate planning purposes, not as an indication of equal equitable ownership. The bankruptcy court rejected the evidence offered by the appellants that sought to contradict the plain terms of the grant deed. On appeal, the district court affirmed explaining:

> The June 22, 2007 Deed provides that Debtors and Appellants are "joint tenants," which under Hawaii law means that they have equal ownership of the subject properties. *See, e.g., Sawada v. Endo*, 57 Haw. 608, 613, 561 P.2d 1291, 1295 (1977) (explaining that "a joint tenant has a specific, albeit undivided, interest in the property, and if he survives his cotenant he becomes the owner of a larger interest than he had prior to the death of the other joint tenant"); *De Mello v. De Mello*, 24 Haw. 675, 676 (1919) (stating that "possession of one joint tenant, or tenant in common, is the possession of all, and all are equally entitled to the use and enjoyment of the property"). The parties' dispute centers on whether extrinsic evidence is admissible to vary the plain terms of the June 22, 2007 Deed. Trustee argues that this dispute is governed by *Midkiff v. Castle & Cooke, Inc.*, 45 Haw. 409, 368 P.2d 887 (1962), which adopted the parol evidence rule in construing a deed. In comparison, Appellants argue that the court should follow *Fukunaga v. Fukunaga*, 8 Haw.App. 273, 800 P.2d 618 (1990), which allowed extrinsic evidence as to the joint tenants' true relationship. Although both these cases are helpful, neither of them answers the question presented in this action—i.e., **whether a joint tenant of a debtor may present evidence to contradict the plain terms of the deed where the bankruptcy trustee seeks the property for the benefit of the bankruptcy estate.**
> For example, *Midkiff* outlined basic rules of deed interpretation in resolving a deed dispute between the grantor and the successor-in-interest to the grantee. *Midkiff* explained that a deed should be construed in accordance with the intent of the parties, as determined from the language of the deed and considering all provisions. *Midkiff*, 45 Haw. at 415, 368 P.2d at 891. *Midkiff* further explained that where there is no ambiguity in the language used, "the parol evidence rule applies[, and] extrinsic evidence of the surrounding facts and circumstances existing prior to, contemporaneously with and subsequent to the execution of the deed ... is not competent to

contradict, defeat, modify or otherwise vary the meaning or legal effect of the deed." *Id.* at 421, 368 P.2d at 894 (citations omitted). Although these basic principles are helpful for general deed interpretation, *Midkiff* does not address any exceptions to the parol evidence rule and its facts are not analogous to this case.

Nor is *Fukunaga* directly on point. *Fukunaga* involved a partition action between two parties (and feuding family members) that were listed on a deed as joint tenants. *Fukunaga* authorized the defendant to present extrinsic evidence establishing that the plaintiff was included on the deed because he was a surety to help secure a mortgage and that he otherwise had no real interest in the property. *Fukunaga*, 8 Haw.App. at 275–77, 800 P.2d at 620–21. In allowing this evidence, *Fukunaga* rejected the plaintiff's argument that the parol evidence rule applied, reasoning that the parol evidence rule "does not operate to exclude evidence as to the true relationship between the parties on one side of a written agreement [because] that relationship is collateral to the written instrument." *Id.* at 282, 800 P.2d at 623 (quoting Lee v. Kimura, 2 Haw.App. 538, 542, 634 P.2d 1043, 1046 (1981)). Rather, this dispute was "between two of the Grantees," and any agreement between the grantees as to "who are the true owners of the Property and who has a security interest, despite being named a joint tenant in the deed, does not affect the deed at all." *Id.*

*Fukunaga* is certainly helpful in establishing that in interpreting a deed, exceptions to the parol evidence rule exist under appropriate circumstances. But the court rejects Appellants' argument that *Fukunaga* is directly analogous to this case. Specifically, Appellants argue that this case is similar to *Fukunaga* because like *Fukunaga*, this case is essentially between two joint tenants—Appellants and Trustee, who under bankruptcy law stands in the shoes of the Debtor. **But in fact, this is not a dispute between two joint tenants.**

Although Appellants correctly state the general maxim of bankruptcy law that a trustee stands in the shoes of a debtor, *see In re Maunakea*, 448 B.R. 252, 266 (D.Haw.2011), the court does not apply such statement literally to the relationship between Trustee and Debtors. **Rather, when Debtors filed for Chapter 7 bankruptcy, all of their assets became the property of the bankruptcy estate. See 11 U.S.C. § 541(a)(1). The Chapter 7 trustee then administers that estate, not only as a representative or "in the shoes" of Debtors, but as both a legal representative and fiduciary of the estate. The impartial trustee must act in the best interests of the creditors and the bankruptcy estate, not solely Debtors. Thus, his "primary job is to marshal and sell assets, so that those assets can be distributed to the estate's creditors and then close the estate." *In re AFI***

***Holding, Inc.*, 530 F.3d 832, 845 (9th Cir.2008) (citing *In re Joseph*, 208 B.R. 55, 60 (9th Cir. BAP 1997)). Thus, unlike *Fukunaga* where at issue was a collateral agreement between two joint tenants, Appellants seek to present evidence to change the plain terms of the June 22, 2007 Deed as against Trustee, who was not a party to the June 22, 2007 Deed or Debtors' subsequent transfer of their interests to Appellants.**

Although *Midkiff* and *Fukunaga* do not resolve the parties' dispute, *In re Teranis*, 128 F.3d 469 (7th Cir.1997), addressed the same basic issue presented before this court. At issue in *In re Teranis* was whether the debtor (Teranis) had an interest in a condominium she held in joint tenancy with her mother (Zarins) such that the bankruptcy trustee had authority to sell the condominium. In opposing the sale, Zarins argued that despite the language of the deed stating that the condominium was held as a joint tenancy, she was the sole owner and that the applicable state law (Wisconsin) allowed her to rebut the presumption of equal ownership. *Id.* at 471–72. Rejecting this argument, *In re Teranis* explained that the cases relied upon by Zarins—*Jezo v. Jezo*, 23 Wis.2d 399, 127 N.W.2d 246 (1964) ("Jezo I"), and *Jezo v. Jezo*, 23 Wis.2d 399, 129 N.W.2d 195 (1964) ("Jezo II")—"address only the rights inter sese of cotenants. They do not deal with the rights of creditors of one or more of the cotenants." Id. at 472. **Rather, *In re Teranis* reasoned that third parties such as creditors and the bankruptcy trustee must be allowed to rely on the plain terms of a deed:**

We agree with the district court that, if *Jezo I* were applied in voluntary bankruptcy cases, "debtors could shield from creditors assets received as gifts because they did not contribute to their acquisition." Memo. Op. at 4. This is exactly what Teranis attempts to do with the condominium. Even though her name is on the deed as owner, Teranis wants to claim that the property is a gift, and, moreover, a future gift, so that it cannot be taken by her creditors. Despite Zarins' argument to the contrary, it does not matter whether she did or did not intend to give one half of the condominium to Teranis at the signing of the deed or all of it at her, Zarins', death; the fact remains that Teranis' name is on the deed now.

Third parties, be they prospective buyers or creditors, cannot be expected to investigate the possibility of unequal ownership, as *Jezo II* made clear; they can rely upon the face of the deed indicating that each joint tenant has an equal interest in the property. [The bankruptcy trustee] relied on the deed to ascertain Teranis' ownership of the condominium. The district court did not err in finding that Teranis is a coequal owner of the condominium.

*Id.*; *see also In re Kasparek*, 426 B.R. 332, 343–44 (10th Cir. BAP 2010) (**holding that even if the non-**

> **debtor/joint tenant owned the entire equitable interest in the property at issue, the trustee stood in the shoes of a hypothetical bona fide purchaser such that the plain terms of the deed stating that debtor was a joint tenant controlled**); *In re Crawford*, 454 B.R. 262, 272 (Bankr.D.Mass.2011) (**rejecting argument that joint tenancy was anything other than equal ownership of real property**).
>
> The court finds *In re Teranis* persuasive—**if third parties such as creditors cannot rely on the face of a deed, then any assets held in joint tenancy will require investigation. It is for this very reason that "creditors are entitled to rely 'on the face of the deed,' " regardless of whatever the equitable interests may be between the joint tenants.** *See In re Risler*, 443 B.R. 508, 510 (Bankr.W.D.Wis.2010) (quoting *In re Teranis*, 128 F.3d at 472). Indeed, especially in the bankruptcy context, allowing extrinsic evidence would open the door to collusion given that joint tenants' interests will often be aligned to shield assets from the bankruptcy trustee and/or creditors. The parol evidence rule is designed to prevent this type of possible fraud—the "rule discourages interested witnesses to a contract from committing fraud, perjury, or unintentional invention by making statements that the contract did not actually represent the agreement of the parties." *Brinderson–Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 277 (9th Cir.1992); *see, e.g., In re Uni–Rty Corp.*, 191 B.R. 595, 597 (Bankr.S.D.N.Y.1996) (explaining that the parol evidence rule is "based upon an assumed intention of the parties, evidenced by an unambiguous written contract, to protect themselves from the uncertainties of oral testimony, infirmity of the memory and death of witnesses and to prevent fraud and perjury").
>
> . . .
>
> In sum, the court finds that the parol evidence rule applies to the June 22, 2007 Deed to prevent admission of extrinsic evidence suggesting that the subject properties were held in anything other than a joint tenancy. Application of this rule in this action makes common sense—**third parties, including the Trustee, must be able to rely on the terms of a recorded deed.** Further, the caselaw cited by Appellants suggests no exception to the parol evidence rule that would apply under these circumstances. Although, as the bankruptcy court stated, this may be a "sad and painful" situation, the court AFFIRMS the bankruptcy court's summary judgment determination that the June 22, 2007 Deed created a joint tenancy between Debtors and Appellants such that Debtors were fifty percent owners of the subject properties.

*In re Henshaw*, 485 B.R. 412, 417-21 (D. Haw. 2013)(emphasis added).

Thereafter, the trustee commenced another adversary proceeding to sell the property pursuant to § 363(h), which the appellants again opposed and appealed. In this related appeal, the district court again affirmed that the bankruptcy court was correct in applying the parol evidence rule to prevent appellants from varing the terms of the unambiguous grant deed. *In re Henshaw*, CIV. 13-00388 DKW, 2014 WL 185782 (D. Haw. Jan. 13, 2014).

  ii.  <u>California Law on Estoppel by Deed & Parol Evidence</u>

As the trustee pointed out at oral argument, there is a presumption under California law that the grant deed properly reflects ownership interests in the property. According to the "form of title" presumption, the description in a deed as to how title is held is presumed to reflect the actual ownership interests in the property. *In re Marriage of Brooks*, 169 Cal. App. 4th 176, 184-85, 86 Cal. Rptr. 3d 624, 630-31 (2008)(citing *In re Marriage of Haines*, 33 Cal.App.4th 277, 292, 39 Cal.Rptr.2d 673 (1995); *In re Marriage of Broderick*, 209 Cal.App.3d 489, 496, 257 Cal.Rptr. 397 (1989)). This common law presumption is codified in Evidence Code section 662, which provides: The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof. *Id.* (quotations omitted). The presumption is based on promoting the public policy in favor of the stability of titles to property. Allegations ... that legal title does not represent beneficial ownership have ... been historically disfavored because society and the courts have a reluctance to tamper with duly executed instruments and documents of legal title. *Id.* (quotations omitted). Thus, in the absence of any showing to the contrary, the status declared by the instrument through which the parties acquired title is controlling. *Id.* (citations and quotations omitted).

Here, Debtor is presumed to be 50% owner of the subject property under California law as per the grant deed. The question is whether Rose may admit extrinsic evidence to rebut this presumption.

As an executed contract, a deed is subject to the rules of interpretation applicable to contracts in general. When the language of the instrument is clear and explicit, parol evidence cannot be relied on to show the nature and extent of the rights transferred or acquired. *Union Pacific Railroad Co.*, 101 Cal. App. 4th 1209, 1214, 125 Cal. Rptr. 2d 100 (2d Dist. 2002). As a general rule, when any ambiguity is not evident from the face of the instrument (i.e., a "latent" ambiguity), the deed must be construed solely from an analysis of the plain meaning of the document itself, and extrinsic evidence is not admissible. *Baker v. Ramirez*, 190 Cal. App. 3d 1123, 1132, 235 Cal. Rptr. 857, 862 (Ct. App. 1987). This general rule has sometimes been disregarded in favor of the more modern principle allowing the introduction of extrinsic evidence to prove a meaning of which the language is reasonably susceptible even when the ambiguity is not patent, but the latter rule has been criticized when the rights of third parties may be affected. *City of Manhattan Beach v. Superior Court*, 13 Cal. 4th 232, 246, 914 P.2d 160, 169 (1996)(permitting extrinsic evidence); *but see Abers v. Rounsavell,* 189 Cal. App. 4th 348, 358, 116 Cal. Rptr. 3d 860 (4th Dist. 2010)(not permitting extrinsic evidence to vary deed's terms).

If the original parties are not the only persons with an interest, then a different result may follow from the application of the doctrines of bona fide purchaser and constructive notice. *See Caito v. United California Bank*, 20 Cal. 3d 694, 701-702, 144 Cal. Rptr. 751, 576 P.2d 466 (1978). **If there is no ambiguity on the face of the document, and no reference to information or terms in the recorded document or from the circumstances of the conveyance that would lead a bona fide purchaser to inquire as to the intent and meaning of the instrument, then the bona fide purchaser is entitled to rely on the written record and is not charged with or bound by unstated meanings or by secret or collateral agreements that add to or alter the written record**. *Id.* (emphasis added). If the ambiguity is apparent on

the face of the instrument, or there are references in the document that would lead a bona fide purchaser to inquire, then the successor purchaser or encumbrancer is charged with notice of what would result by such inquiry; this includes the meaning attached to the language by the parties as well as any other matters that may affect title. *Buehler v. Oregon-Washington Plywood Corp.*, 17 Cal. 3d 520, 529, 131 Cal. Rptr. 394, 551 P.2d 1226 (1976). In such cases, extrinsic evidence of the intent of the parties is admissible to prove the actual intent and meaning of the instrument. *Murphy Slough Assn. v. Avila*, 27 Cal. App. 3d 649, 655-656, 104 Cal. Rptr. 136 (5th Dist. 1972).

The trustee has the status of a bona fide purchaser of real estate and is only subject to those matters that a bona fide purchaser would take subject to on the petition date. 11 U.S.C. § 544(a). Rose has not presented any evidence showing that the terms of the grant deed were ambiguous as of the petition date. In fact, during oral argument, Movant's counsel stated that Rose would stipulate to a 50% interest in the Property. Accordingly, the introduction of extrinsic evidence against the trustee as a BFP, as per § 544(a)(3), would be inadmissible to vary the terms of the grant deed, which is what Rose seeks to do.

As the *Henshaw* court noted, in the bankruptcy context, allowing extrinsic evidence where there is no ambiguity on the face of the grant deed would open the door to collusion given that tenants' interests will often be aligned to shield assets from the bankruptcy trustee and/or creditors; and application of the parol evidence rule in this action makes common sense—third parties, including the trustee and the estate's creditors, must be able to rely on the terms of a recorded deed.

Although Movant cites to cases where California courts have determined ownership interests to be proportionate to the tenant's contributing share of the purchase price of the property, those cases do not take a bankruptcy case into account, nor do they address the rights of a BFP in that context. Those cases deal with the parties to the original transaction, where the rights of third parties are not affected. In those instances, California law would generally permit parol evidence to determine the true intent of the parties. The trustee's status as a BFP could be considered the dispositive factor here, as the trustee and estate creditors should be permitted to rely on the face of the unambiguous grant deed showing Debtor's interest in the Property to be a 50% tenant in common.

As a result, Movant is not entitled to partial summary judgment on the issue of entitlement to reimbursement for his $300,000 contribution to the purchase price because it does not appear that he is entitled to a judgment as a matter of California law. In fact, the Court grants partial summary judgment for the non-moving party under FRCP 56(f)(1) since the California law estops Rose from asserting an interest contrary to that as stated on the face of the unambiguous grant deed against a BFP trustee.

Based on this ruling, the Court need not address the prior two issues raised in the Trustee's Opposition, whether Rose is precluded from relitigating the issue of the estate's and co-owner's interests in the Property in this adversary based on the Valuation Order and; whether Rose is estopped from relitigating the issue of the estate's and co-owner's interests in the Property based on the doctrine of judicial estoppel. Those issues are moot given that Rose is estopped from litigating the estate's interest in the Property based on the unambiguous grant deed vesting title in Debtor as a 50% owner of the Property as a tenant in common.

///

///

1 | Defendant's Motion is DENIED. Partial summary judgment is GRANTED for Plaintiff under FRCP 56(f) as to the estate's interest in the Property under §363(h). The remaining issues to be litigation appear to be: (1) whether the sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owner and; (2) whether the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners.

IT IS SO ORDERED.

###

Date: May 1, 2014

Maureen A. Tighe
United States Bankruptcy Judge